In the Matter of the Construction of the Last Will and Testament of FERDINAND C. F. SIEVERT, Deceased.

FERDINAND SIEVERT, JR., and Another, as Executors, etc., of FERDINAND C. F. SIEVERT, Deceased, Appellants; LAWRENCE WHITE and Others, Contingent Remaindermen, by Their Special Guardian ELMER O. BRINKMAN, Respondents.

Fourth Department, December 23, 1935.

*Edwin G. O'Connor*, for the appellants.

*Elmer O. Brinkman*, special guardian for Lawrence White and others, infant remaindermen, and for unborn contingent remaindermen, respondents.

*William S. Stearns*, for the respondents William F. and Wilhelmina Goldberg.

EDGCOMB, J.   We are called upon to construe the last will and testament of Ferdinand C. F. Sievert, late of the village of Fredonia, N. Y.

After directing the payment of his debts and funeral expenses, the testator disposed of his property in the following language: " I give bequeave and devise all the residuue of my real and personal estate of whatever nature to my only son Ferdinand Sievert, Jr. and his wife Dorathea Vantine Sievert, jointly, during their natural life. In case of death to either one of them it shall revert to the one living, or so much there of as remains unexpended.   If there are no direct Heirs or Children from this union at the time of death of the last one mentioned The whole estate shall revert to the family of my Sister Mrs. Wilhelmina Goldberg wife of William F. Goldberg to be devided equally amongst her direct Heirs."

In the decree appealed from Ferdinand Sievert, Jr., and Dorothea VanTine Sievert, his wife, are awarded a life estate in decedent's property, with power to use and consume portions of the corpus of said estate when specifically permitted and ordered so to do by the Surrogate's Court of Chautauqua county.   The other portions of the decree are not criticized, and we may, therefore, confine our attention to the above ruling.

It is a trite and hackneyed statement when we assert that the underlying principle to be adopted in the construction of a will is to ascertain and follow the intent of the testator, and to refrain from making or rewriting a new one for him, under the guise of interpretation.

The purpose of the decedent to give his son and daughter-in-law not only the use of his property, after the payment of his debts and funeral expenses, but the right to invade the principal as they saw fit, stands out with crystal clearness. The will gives to them the residue of the testator's estate jointly during their natural lives, and in case either dies the property reverts to the one living, " or so much there of as remains unexpended." This last clause indicates in no ambiguous terms that decedent contemplated that his beneficiaries might spend so much of the principal as they desired. The word " unexpended " is significant. Testator did not stop with the expression " so much there of as remains; " he took no chances that his wishes might be misunderstood; he made it certain that the language which he employed would not be construed to cover only a shrinkage in the value of the estate. The word " unexpended " carries with it a clear and unambiguous purpose on decedent's part to give his beneficiaries unrestricted power and authority to " spend " such part of the corpus of his estate as they saw fit. He nowhere limits the amount of such disbursement, nor does he constitute or appoint any one, other than the recipients of his gift, the arbiter of the extent of the invasion.

The intention of the testator as expressed in his will is so plain and definite that it would seem unnecessary to refer to the numerous decisions in other cases involving the right of life tenants to invade the corpus of an estate. Recourse to a few may not be out of place, however.

No question is raised, nor can it be, as to the right of a testator to devise his property to a person during life, giving to such a one an additional power to invade the principal as he might desire, without enlarging the estate to a fee. (*Terry* v. *Wiggins*, 47 N. Y. 512; *Leggett* v. *Firth*, 132 id. 7, 10, 11; *Matter of McClure*, 136 id. 238, 243.)

In *Thomas* v. *Wolford* (49 Hun, 145) it was held that a life tenant could invade, without let or hindrance, the corpus of the estate, under the provisions of a will which left decedent's property to his widow during her lifetime, and which provided that, at her death, the property, " should there be any left," was to be divided among the children or their heirs.

A like construction was adopted when the language following a bequest for life was " whatever personal estate may remain at the decease of my wife " (*Seaward* v. *Davis*, 198 N. Y. 415); " if any of said real or personal property is left " (*Kendall* v. *Case*, 84 Hun, 124); " and at her death all that may remain and be left is to go to our daughter," etc. (*Mitchell* v. *Van Allen*, 75 App. Div. 297); " the rest and residue thereof then remaining " (*Matter of Skinner,*

81 id. 449; affd., 180 N. Y. 515); "the remainder thereof, if any" (*Leggett* v. *Firth,* 132 id. 7).

We think that the surrogate, when he limited the right of the life tenants to invade the corpus of decedent's estate to occasions when they were permitted and ordered so to do by the Surrogate's Court of Chautauqua county, unduly hedged about and restricted the privilege which had been accorded them by the testator himself. The intent of decedent to so limit his bequest is nowhere indicated in the will. His purpose to make that right boundless, and dependent solely upon the wish or caprice of the life tenants, is clear and certain. Were it not so he would have restricted and circumscribed the power in some manner.

*Bundy* v. *Bundy* (38 N. Y. 410) does not authorize the interpretation given to this will by the surrogate. In that case decedent gave to his wife and his niece the use of so much of the interest arising from his personal property as should be necessary and proper for their respective maintenance and support, and directed that, if the interest of their respective parts should be insufficient for their support, a portion of the principal should be applied to that purpose. As the will failed to authorize either the beneficiaries or the executors to determine the amount to be paid for the support of the life tenants, it was held that the amount should be fixed by the court. The testator in that case gave no indication of his intent to give his wife or niece any discretion or authority in the matter; he limited the income which they should receive from his personal property, and only permitted them to invade the principal if "necessary and proper for their maintenance and support." Someone must determine to what degree the life tenants could properly encroach upon the corpus of the estate, and as the testator gave no indication as to whom that individual should be, it was held that the justice was the proper person to make the decision. In the instant case the will is replete with convincing evidence of testator's desire to make his beneficiaries the sole and solitary judges of the extent to which they might invade the corpus of his estate.

We have, therefore, reached the conclusion that the surrogate erred in his interpretation of decedent's will as above indicated, and that the decree should be modified by striking out the limitation placed upon the power of the life tenants to invade the principal of decedent's estate, and as thus modified affirmed, with costs to appellants and to the special guardian payable out of the estate.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and LEWIS, JJ.

Decree modified and as modified affirmed, with costs to the appellants and to the special guardian payable out of the estate.